Filed 3/4/16  Marian Pacific Homeowners Assn. v. Southern Cal. Financial Corp. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| MARINA PACIFICA HOMEOWNERS ASSOCIATION,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>SOUTHERN CALIFORNIA FINANCIAL CORPORATION,<br><br>    Defendant and Appellant;<br><br>WILLIAM KOZAITES,<br><br>    Defendant and Respondent. | B255413<br><br>(Los Angeles County<br>Super. Ct. No. NC052700) |
| MARINA PACIFICA HOMEOWNERS ASSOCIATION,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>WILLIAM KOZAITES et al.,<br><br>    Defendants and Respondents. | B256664<br><br>(Los Angeles County<br>Super. Ct. No. NC052700) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Patrick T. Madden, Judge. Affirmed in part; reversed in part.

Locke Lord, Christopher J. Bakes, Daniel A. Solitro and Susan A. Kidwell for Plaintiff and Appellant.

Greenberg Traurig, Scott D. Bertzyk, Adam Siegler and Matthew R. Gershman for Defendant and Appellant and Defendant and Respondent.

\* \* \* \* \* \*

This litigation concerns the Marina Pacifica condominium project (Marina Pacifica) in Long Beach, California. We disposed of an appeal and cross-appeal from the judgment in December 2014 (the merits appeal). The merits appeal dealt with the enforceability of an "assignment fee" that the unit owners paid to the developer of Marina Pacifica. (*Marina Pacifica Homeowners Assn. v. Southern California Financial Corp.* (2014) 232 Cal.App.4th 494 (*Marina Pacifica I*).) In this second appeal, we deal with postjudgment motions for attorney fees, costs, and offset. We affirm in part and reverse in part.

## FACTS AND PROCEDURE

### 1. *Our Opinion in the Merits Appeal*

We summarize some of the pertinent facts and procedural history from our opinion in *Marina Pacifica I*. Marina Pacifica is a 570-unit condominium complex on the Long Beach waterfront. (*Marina Pacifica I, supra*, 232 Cal.App.4th at p. 497.) Defendant William Lansdale was part of a limited partnership that developed and constructed Marina Pacifica in the early 1970's.[1] (*Ibid.*) Unit owners purchased an ownership in

---

[1]    Lansdale passed away on June 27, 2014. We granted a motion to substitute in the cospecial administrator of his estate, William Kozaites. For the sake of simplicity, we will continue to refer to Lansdale.

their condominium unit and an undivided leasehold interest in the land underlying the complex, which was governed by the "unit lease." (*Ibid.*) The unit lease obligated the unit owners to pay monthly rent to the landowner and a separate monthly "assignment fee" to the developer, i.e., the limited partnership. (*Id.* at p. 498.) The assignment fee was a fixed, nominal amount from the 1970's until October 2006, at which time it was scheduled to increase substantially based on an appraisal of the property's fair market value. (*Ibid.*) As a result of the developers dissolving their limited partnership, and Lansdale assigning his interest in the assignment fee to codefendant Southern California Financial Corporation (SCFC), the unit owners are now obligated to pay the assignment fee to SCFC. (*Id.* at pp. 499, 500.)

Plaintiff Marina Pacifica Homeowners Association (the HOA) commenced the instant action after SCFC began billing the unit owners for the assignment fee in December 2008. (*Marina Pacifica I, supra*, 232 Cal.App.4th at pp. 500-501.) The gravamen of the first amended complaint was that the assignment fee was invalid or unenforceable for several reasons, or assuming it was valid and enforceable, SCFC's billing vastly overstated the amount owing. (*Id.* at p. 501.) One theory the HOA asserted was that the assignment fee constituted a "transfer fee" under Civil Code section 1098, and because SCFC or Lansdale did not comply with the requirements of sections 1098 and 1098.5, SCFC could not collect the assignment fee after December 31, 2008. (*Marina Pacifica I*, at p. 501.) A second theory the HOA advanced was that its purchase of the land from the original landowner caused a merger of the landlord's and tenants' estates, thereby extinguishing the unit lease. As such, the obligation to pay the assignment fee to the developer was extinguished. Further, the assignment fee provision failed for lack of consideration or unconscionability. (*Ibid.*)

The unit lease described a method for calculating the assignment fee, and the parties advanced competing interpretations. (*Marina Pacifica I, supra*, 232 Cal.App.4th at p. 501.) To the extent the court found the fee valid, the HOA asserted the "4 percent formulation" constituted the proper way to calculate it. (*Id.* at p. 502.) SCFC and Lansdale asserted the "10 percent formulation" was the proper interpretation. (*Id.* at

3

p. 501.) The 10 percent formulation resulted in a higher assignment fee. The HOA alleged causes of action for breach of contract and breach of the covenant of good faith and fair dealing based on SCFC's billing the unit owners under the 10 percent formulation, rather than the "'agreed upon'" 4 percent formulation. (*Id.* at p. 502.)

Prior to trial, the court disposed of several theories or causes of action based on defendants' motions for summary adjudication arguing the statute of limitations barred claims. The court granted summary adjudication of claims alleging that the assignment fee was void from its inception in the 1970's and seeking restitution of the fee payments. (*Marina Pacifica I, supra*, 232 Cal.App.4th at p. 502.) It also granted summary adjudication of claims running from 1999 based on the merger of the landlord's and tenants' estates. (*Ibid.*)

The bench trial involved mixed results for the parties. First, the court held the assignment fee was a transfer fee within the meaning of Civil Code section 1098 and was not collectible after December 31, 2008, under section 1098.5. (*Marina Pacifica I, supra*, 232 Cal.App.4th at pp. 502-503.) The judgment set forth the amount the homeowners owed SCFC for unpaid assignment fees through December 31, 2008. Second, to the extent SCFC could collect the assignment fee through that date, the 4 percent formulation advanced by the HOA constituted the proper calculation of the fee. (*Id.* at p. 503.) Third, despite this ruling, the court held SCFC's billing under the 10 percent formulation did not constitute a breach of contract or a breach of the implied covenant of good faith and fair dealing. (*Id.* at pp. 503-504.) Fourth, the court held the assignment fee did not fail for lack of consideration. (*Id.* at p. 504.) While the bench trial took place in 2011, the court did not enter judgment until July 2013. SCFC appealed from the judgment, and the HOA cross-appealed.

We issued our opinion in December 2014 affirming in part and reversing in part. We held the assignment fee was collectible even after December 31, 2008. (*Marina Pacifica I, supra*, 232 Cal.App.4th at p. 505.) Although the fee fell within the statutory definition of a transfer fee in Civil Code section 1098, the "substantial compliance exception" in the statute exempted it from treatment as a transfer fee. (*Marina Pacifica I,*

4

at pp. 505-512.)  Therefore, the statutory scheme did not bar SCFC from collecting it, and we reversed the portion of the judgment holding otherwise.  (*Id.* at p. 512.)  We agreed with the trial court that the 4 percent formulation urged by the HOA controlled the calculation of the fee and affirmed the judgment to that extent.  (*Marina Pacifica Homeowners Assn. v. Southern California Financial Corp.* (Dec. 16, 2014, B251379) [nonpub. part of partially pub. opn.] [p. 24].)[2]  But we held SCFC's overbilling and collecting the higher fee from some unit owners constituted breach of contract—though *not* breach of the covenant of good faith and fair dealing—and reversed the portion of the judgment finding for SCFC on this cause of action.  (*Marina Pacifica Homeowners Assn., supra*, B251379 [pp. 24-28].)  We did not reverse the judgment for Lansdale on the breach of contract cause of action because SCFC had done the overbilling, not Lansdale.  (*Marina Pacifica Homeowners Assn., supra*, B251379 [pp. 25, 34].)  Finally, we held the court did not err in granting summary adjudication on some claims based on the statute of limitations.  (*Marina Pacifica Homeowners Assn., supra*, B251379 [pp. 30-34].)

## 2.  *Postjudgment Motions*[3]

After the court entered judgment, the parties filed a series of motions for fees, costs, and offset, which are the subject of this appeal.  The HOA filed a motion seeking

---

**2**     Our opinion in the merits appeal was partially published.  Thus, when we cite to unpublished portions of the opinion (see Cal. Rules of Court, rule 8.1115(b)(1)), we cite the slip opinion.

**3**     The HOA attempted to consolidate the merits appeal described above with this appeal from the posttrial orders.  We had granted calendar preference to the merits appeal, in light of Lansdale's advanced age and failing health.  (See Code Civ. Proc., § 36, subd. (a) [court shall grant calendar preference to a party over 70 years old when court finds the party has a substantial interest in the action and "health of the party is such that a preference is necessary to prevent prejudicing the party's interest in the litigation"]; Cal. Rules of Court, rule 8.240 [allowing parties to seek calendar preference in the reviewing court].)  At the time of the consolidation motion, the merits appeal had been fully briefed, but briefing had not yet begun in this appeal.  Given the preference status of the merits appeal, and the time it would take to brief this appeal, we denied the consolidation motion.

attorney fees as a prevailing party, as did SCFC and Lansdale.  The HOA's motion sought approximately $3.1 million in fees.  SCFC and Lansdale's joint motion sought $2.5 million in fees.

The HOA filed a memorandum of costs seeking $53,665.21 in total costs. Lansdale and SCFC filed a memorandum seeking $114,981.57 in total costs.  Each side filed a motion to strike the other side's costs on the ground that the other side was not the prevailing party, or in the alternative, to tax costs.

The HOA also filed a motion for offset.  The HOA argued that the amount the homeowners owed SCFC in unpaid assignment fees should be offset by any fees and costs awarded to the HOA, since those fees and costs would be paid by SCFC.  Without an offset, the HOA argued, there would be a superfluous exchange of money between the parties.  The motion assumed the court would award the HOA attorney fees and costs as the prevailing party.  The HOA acknowledged that it and defendants had competing claims to fees and costs, and if the court's orders did not result in a net award of fees and costs to the HOA, the motion would be moot.

### a. Ruling on the Attorney Fees Motions

After hearing oral argument on the postjudgment motions, the court ordered Lansdale, SCFC, and the HOA to each file a summary of the total fees sought, including (1) a breakdown of the attorneys and staff who performed services by name, position, hourly rate, and total hours claimed for that person; and (2) "[a] very brief description of the categories of work the hours represent."  It also ordered:  ". . . Lansdale must submit a summary for his claimed fees alone, as must SCFC."

The court issued its order on the attorney fees motions in March 2014.  It noted that all parties agreed the unit lease authorized recovery of attorney fees and held the attorney fees provision broadly covered any litigation concerning the assignment fee.  As between SCFC and the HOA, the court held there was no prevailing party on the contract. It did "not make this finding lightly, and [did] so after careful deliberation."  Both parties' claims to prevailing party status had some merit, which was why the decidedly mixed result in the litigation resulted in no clearly prevailing party as between the two.

6

On the one hand, the HOA achieved "a primary goal" in the holding that the assignment fee was a transfer fee and not collectible after December 31, 2008. As well, it prevailed in its position that the 4 percent formulation controlled the calculation of the fee. But it mostly failed in its larger challenge to the assignment fee from its inception in the 1970's or the merger of estates in 1999. On the other hand, SCFC obtained a substantial monetary award for unpaid assignment fees through December 31, 2008, because many unit owners had not paid the fee for years while the controversy was ongoing. But SCFC's recovery was still significantly less than the amount it claimed under the 10 percent formulation.

As to Lansdale, however, the court held that "[u]nder any reasonable standard," he was a prevailing party. The HOA pursued claims to force him to disgorge assignment fee payments back to the 1970's, yet it recovered nothing against him. Further, while the HOA made bare allegations that Lansdale was the alter ego of SCFC, there was no evidence that SCFC was anything other than a separate legal entity. Still, he could not shift the costs of defending SCFC to himself. The court explained:

"Defendants have urged that the two defendants must be considered separately, and the court agrees. With respect to Mr. Lansdale, the litigation was fairly simple. He had assigned all of his interest in the assignment fee to SCFC and this was a simple matter to prove. Mr. Lansdale is not entitled to fees for defending the continued enforceability of the fee or the method of calculation. It is equally true that plaintiff sought restitution of a substantial amount of money from Mr. Lansdale on theories that the fee was void from its inception or unenforceable after the merger of estates.

"Balancing these considerations, the court finds that Mr. Lansdale's defense is approximately 1/5 (or 20%) of the fees incurred. The court reached this figure by taking judicial notice of its file and considering how much actual litigation concerned Mr. Lansdale individually and the amount of work for which Mr. Lansdale was nominally involved but was primarily for the benefit of SCFC. The court finds only 1/5 of the fees claimed jointly by the defendants is fairly allocated to Mr. Lansdale's defense alone."

7

The court declined to adopt the hourly rates proffered by Lansdale and SCFC's counsel and instead set forth its own reasonable hourly rates for each attorney who performed work. It then applied those hourly rates to the number of hours worked by each attorney to arrive at a lodestar figure of $601,500. It declined to apply a multiplier or "success fee" to the lodestar and simply awarded Lansdale the bare lodestar amount.

**b. Rulings on the Costs and Offset Motions**

The court issued its order on the remaining posttrial motions in May 2014. First, it denied the HOA's motion for offset. It held that the individual unit owners were liable for the monetary award to SCFC for unpaid assignment fees. The HOA acted only in a representative capacity in litigating the case and could not offset anything against the liabilities of the individuals. Second, as to costs, the court taxed the costs of the HOA and SCFC in their entirety because neither party was a prevailing party. But Lansdale was entitled to recover his costs as a prevailing party. It taxed two specific items because one involved exhibits "not reasonably helpful to the trier of fact," and the other was not an allowable cost under Code of Civil Procedure section 1033.5. The taxed items amounted to $64,856.85. That left $50,124.72 in costs jointly claimed by Lansdale and SCFC. The court then taxed the jointly claimed costs by 50 percent to represent the costs incurred only by Lansdale and not SCFC. It awarded him a total of $25,062.41 in costs from the $114,981.57 he and SCFC sought.

The HOA appealed from the attorney fees order and SCFC cross-appealed. Only the HOA appealed from the order on the costs and offset motions. We consolidated the appeals.

## DISCUSSION

### 1. *The HOA's and SCFC's Attorney Fees and Costs*

The HOA contends we should reverse the orders denying its fee motion and costs and remand for the trial court to redetermine the prevailing party as between the HOA and SCFC. SCFC contends we should reverse the orders denying its fee motion and costs, declare SCFC to be the prevailing party, and remand only for the court to

8

determine the reasonable amount of fees and costs SCFC may recover. The HOA has the right approach.

Civil Code section 1717 makes attorney fees recoverable in an action on a contract when the contract specifically provides for one party or the prevailing party to so recover. (Civ. Code, § 1717, subd. (a).) Likewise, a prevailing party is entitled to recover costs "as a matter of right." (Code Civ. Proc., § 1032, subd. (b).) "[I]n deciding whether there is a 'party prevailing on the contract,' the trial court is to compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources. The prevailing party determination is to be made only upon final resolution of the contract claims and only by 'a comparison of the extent to which each party ha[s] succeeded and failed to succeed in its contentions.'" (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 876.)

It is well settled that the trial court has broad discretion in selecting the prevailing party, and we review this determination merely for abuse of discretion. (*Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332, 1339; *Hunt v. Fahnestock* (1990) 220 Cal.App.3d 628, 633.) It is equally well settled that reversal of the judgment necessarily compels reversal of an order awarding fees and costs to the prevailing party based on the judgment (*Allen v. Smith* (2002) 94 Cal.App.4th 1270, 1284)—or in the circumstances of this case, reversal of an order determining there was no prevailing party is compelled. "After reversal of a judgment, 'the matter of trial costs [is] set at large.'" (*Ibid.*)

Both parties would seem to agree that our disposition of the merits appeal requires reconsideration of the prevailing party. Our disposition reversed the judgment in a few key respects. We reversed the determination that SCFC could not collect the assignment fee after December 31, 2008, and remanded for further proceedings to determine the revised amounts owed to SCFC. We also reversed the judgment for SCFC on the breach of contract cause of action. In other words, we improved the outcome for SCFC in one respect, and worsened it another respect. Our disposition also affirmed other key aspects of the judgment. But it is only after remand and the court enters the amended judgment

9

that a "final resolution of the contract claims" has occurred. (*Hsu v. Abbara, supra*, 9 Cal.4th at p. 876.)

SCFC argues that it is unequivocally the prevailing party, any claim by the HOA to prevailing party status is preposterous, and to prevent a waste of judicial and party resources, we should exercise our own discretion to declare it the prevailing party now.[4] We decline SCFC's invitation to usurp the trial court's discretion.

SCFC relies on *Mann v. Quality Old Time Service, Inc.* (2006) 139 Cal.App.4th 328 (*Mann*). *Mann* does *not* teach that we should ignore the trial court's discretion to determine the prevailing party issue. In *Mann*, the defendants sought attorney fees under the "anti-SLAPP" statute, which permitted the defendants prevailing on an anti-SLAPP motion to recover their fees. (*Id.* at p. 333.) The defendants' anti-SLAPP motion was successful on one cause of action, but unsuccessful on three others. (*Ibid.*) The trial court determined the defendants were prevailing parties within the meaning of the statute and awarded them nearly all their requested fees. This was the order under review in *Mann*. (*Id.* at pp. 334, 336.)

The *Mann* court held the trial court had broad discretion to determine the prevailing party, reviewed the court's determination accordingly, and concluded the court did not err. (*Mann, supra*, 139 Cal.App.4th at p. 340.) On the amount of fees, the court held the trial court erred when it failed to reduce the fees to account for the defendants' partial success on the anti-SLAPP motion. (*Id.* at p. 345.) The court recognized it would

---

**4**      Before briefing commenced in this appeal, SCFC filed a motion for summary reversal (which we denied) and took a slightly different position. In that motion, it recognized that the trial court should redetermine the prevailing party issue. It argued that we could do one of two things: (1) carve out and summarily reverse the attorney fees order and remand it immediately for a redetermination of prevailing party status; or (2) summarily reverse and hold remand "in abeyance" until the parties briefed and the court resolved the remaining issues under review, but order that briefing should focus solely on the remaining issues. We did neither, and rather than summarily reverse one order in a piecemeal fashion, we ordered the parties to proceed with briefing this consolidated appeal.

ordinarily remand for the trial court to apportion fees in its discretion, but "under the particular circumstances" of the case, a remand was wasteful, and it was appropriate for the appellate court to conduct the apportionment. (*Id.* at p. 346.) The trial judge on remand would not be the same who presided over the underlying litigation, and the judge therefore did not have more familiarity with the case than the appellate court. (*Ibid.*) The record on appeal was explicit enough for the appellate court to apportion fees. Also, except for the attorney fees issue, the matter had settled. (*Ibid.*)

The *Mann* court did not decide that it should declare the prevailing party before the trial court had exercised its discretion to do so. It reviewed the trial court's exercise of that discretion. At any rate, our facts do not align with the particular circumstances in *Mann* that rendered remand on the amount of fees wasteful. We have no information that the parties have settled the case, leaving only the amount of attorney fees for determination, if we were to decide the prevailing party issue. Quite the contrary, in fact. It seems the trial court has already begun to dig into attorney fees and other issues. Our remittitur in the merits appeal issued in April 2015. We directed the trial court to revise the judgment, particularly in the amount owed to SCFC, and noted that it could conduct further proceedings deemed necessary. We presume it has undertaken this process. Further, SCFC has already teed up the prevailing party issue in some form for the trial court. In May 2015, SCFC and Lansdale filed a new motion for prevailing party attorney fees below, seeking both (1) fees incurred in the merits appeal, *and* (2) SCFC's fees incurred prior to entry of the original judgment, even though SCFC recognized the prejudgment fees were still before us in this appeal.[5]

In sum, we decline to determine the prevailing party as between the HOA and SCFC before the trial court has exercised its discretion in this regard. We will reverse those parts of the March 2014 order denying the HOA's and SCFC's attorney fee motions

---

[5] We grant SCFC and Lansdale's request for judicial notice of this new motion for prevailing party attorney fees and the supporting declaration of counsel.

11

and the May 2014 order taxing the entirety of their costs, and remand for a new determination in light of the outcome in the merits appeal.

## 2. *Lansdale's Attorney Fees and Costs*

The HOA contends the trial court abused its discretion in abandoning the lodestar method to calculate Lansdale's fee award and instead awarding him 20 percent of SCFC's fees. It also claims the court abused its discretion in awarding Lansdale 50 percent of their jointly claimed costs. We disagree.

The trial court has broad discretion to determine the amount of reasonable attorney fees. (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095.) "'The "experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong'"—meaning that it abused its discretion." (*Ibid.*) "'The value of legal services performed in a case is a matter in which the trial court has its own expertise. [Citation.] The trial court may make its own determination of the value of the services contrary to, or without the necessity for, expert testimony. [Citations.] The trial court makes its determination after consideration of a number of factors, including the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case.'" (*Id.* at p. 1096.)

"[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate." (*PLCM Group, Inc. v. Drexler, supra*, 22 Cal.4th at p. 1095.) "The court may then enhance the lodestar with a multiplier, if appropriate." (*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 254.)

The HOA bases its argument on a mischaracterization of the court's order. Contrary to the HOA's claims, the court did, in fact, use the lodestar method to calculate Lansdale's fees, and it did not make an "arbitrary determination" that Lansdale should recover 20 percent of SCFC's fees. The court set its own reasonable hourly rates for the attorneys and multiplied those rates by a number of hours to reach the lodestar amount. It

12

explained that, rather than use the total number of hours jointly claimed by Lansdale and SCFC, it was using a fraction of those hours—20 percent—to account for the fact that it could allocate only some of the fees to Lansdale's defense alone. Thus, in the court's order, the number of hours worked by each attorney equated to roughly 20 percent of the total hours claimed by that attorney. For instance, Scott Bertzyk claimed 686.7 hours of work. Twenty percent of 686.7 is 137.34. The court's calculation of the lodestar used 140 hours for Bertzyk.

The HOA suggests this 20 percent "[l]ack[ed] any objective anchor" because the court ordered Lansdale to submit a summary of his claimed fees alone, and Lansdale did not comply; he responded by submitting the same summary that SCFC submitted. Thus, the HOA argues, there was no evidence as to the number of hours Lansdale alone could claim. Even assuming Lansdale did not strictly comply with the court's order, the court had its own expertise and discretion to determine the reasonable number of hours itself, which it clearly did. It arrived at the 20 percent figure by considering its file and "how much actual litigation concerned Mr. Lansdale individually and the amount of work for which Mr. Lansdale was nominally involved but was primarily for the benefit of SCFC." It noted that he was not entitled to fees for defending the enforceability of the assignment fee after he assigned his interest to SCFC, which was a "simple matter to prove," but at the same time, the HOA sought restitution of a substantial amount of money from him on theories that the fee was void from its inception or the merger of estates. Defeating those claims took him at least through summary adjudication. In view of the court's explicit reasoning, and the broad discretion it possessed to determine the number of hours reasonably expended, the HOA fails to show error in using 20 percent of the hours jointly claimed.[6]

---

**6** For one of the five attorneys at issue, Adam Siegler, the court apparently used a higher percentage. Siegler was the attorney to whom Bertzyk, the lead trial lawyer, delegated day-to-day oversight on the case. He also co-tried the case with Bertzyk. Siegler claimed a total of 1,464.4 hours. Twenty percent of 1,464.4 is 292.88, but the

We can say the same for Lansdale's costs. We review the amount of costs awarded here for abuse of discretion. (*Goodman v. Lozano, supra*, 47 Cal.4th at p. 1332.) The HOA again claims that the court apportioned costs between Lansdale and SCFC "arbitrarily" when it awarded him 50 percent of the costs, after taxing over $64,000 in costs. The HOA suggests there was no evidence to support this apportionment because Lansdale had to prove at trial only that he assigned his interest in the assignment fee to SCFC—a "simple matter"— and Lansdale did not show which costs were attributable to that simple matter. We are not convinced by this argument. First, the court did not find Lansdale only had to prove the assignment to escape liability. It recognized that he also had to defend against claims that the assignment fee was void from its inception or unenforceable after the merger of estates. Additionally, the first amended complaint alleged Lansdale was the alter ego of SCFC, although the HOA utterly failed to prove this. Lansdale's defense reasonably involved costs incurred other than to show the "simple matter" of assignment. Second, to the extent the court found the trial related mostly to SCFC's defense and not Lansdale's, the court partially accounted for this in the costly items it taxed, which related to the trial. One item was over $9,000 for trial exhibits, and the other was over $55,000 for a trial technician. SCFC and Lansdale's memorandum of costs reveals that, after deducting the taxed items, the bulk of the remaining $50,124.72 constituted deposition costs ($42,697.42), with much smaller amounts attributable to filing and motion fees, service of process, witness fees, and court reporter fees. The HOA has the burden of demonstrating error to overcome the presumption of correctness we afford the trial court's order. (*State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600, 610.) But it fails to explain why Lansdale could not reasonably claim 50 percent of these costs. Similarly, below, it

court attributed 400 hours to him. This is approximately 27 percent of the hours claimed by Siegler. Even if this is slightly higher than the 20 percent the court used for the other attorneys, we are not convinced this apportionment was an abuse of discretion.

14

argued that Lansdale could not recover costs because he was not a prevailing party, or in the alternative, the court should tax the items that were nonrecoverable by statute (the trial exhibits and the trial technician). It did not show that some of the jointly claimed costs were unreasonable for Lansdale to claim.

### 3. *The HOA's Offset Motion*

The HOA urges us to vacate the order denying its offset motion because the trial court lacked jurisdiction to decide a nonjusticiable issue. The issue was not ripe for consideration, according to the HOA, because the court did not award it any fees and costs to offset the monetary judgment for SCFC; the offset motion was therefore irrelevant. The HOA not only wants us to vacate the order, but to instruct the trial court to reconsider a new motion for offset after the court reconsiders attorney fees and costs. We decline to vacate the order and instead affirm it.

"'[I]t is well settled that a court of equity will compel a set off [(also called an offset)] when mutual demands are held under such circumstances that one of them should be applied against the other and only the balance recovered.'" (*Fassberg Construction Co. v. Housing Authority of City of Los Angeles* (2007) 152 Cal.App.4th 720, 762.) The trial court has discretion to determine whether an offset is appropriate, and we review that determination for abuse of discretion. (*Ibid.*)

Ripeness is a branch of the justiciability doctrine. (*Action Apartment Assn. v. Santa Monica Rent Control Bd.* (2001) 94 Cal.App.4th 587, 609.) "A controversy is 'ripe' when it has reached, but has not passed, the point that the facts have sufficiently congealed to permit an intelligent and useful decision to be made." (*California Water & Telephone Co. v. County of Los Angeles* (1967) 253 Cal.App.2d 16, 22.) "The legal issues posed must be framed with sufficient concreteness and immediacy so that the court can render a conclusive and definitive judgment rather than a purely advisory opinion based on hypothetical facts or speculative future events." (*Teachers' Retirement Bd. v. Genest* (2007) 154 Cal.App.4th 1012, 1040.)

The HOA wants to frame the offset issue as unripe now. But in its briefing below, the HOA argued that the issue was "ripe for the court to rule on" because it would be

15

ruling on the attorney fees and costs motions at the same time. (Capitalization and boldface omitted.) In other words, the court would know whether SCFC owed the HOA any fees and costs that could arguably offset the money judgment for SCFC.

We agree with the HOA's former position that the issue was ripe for ruling. The fact that the HOA did not have a preexisting credit against SCFC when it filed the offset motion did not render the issue purely advisory. The potential for a credit was there in the concurrently considered motions. The court had only to determine how much that credit might be, whether $0 or something much higher. As evidenced by the HOA's own motion papers, the legal issues were "framed with sufficient concreteness and immediacy" and the facts had "sufficiently congealed to permit an intelligent and useful decision." (*Teachers' Retirement Bd. v. Genest, supra*, 154 Cal.App.4th at p. 1040; *California Water & Telephone Co. v. County of Los Angeles, supra*, 253 Cal.App.2d at p. 22.) The court did not act in excess of jurisdiction in ruling on the motion's merits.

After declining to award the HOA any fees and costs, the court could have denied the offset motion on the merits because there were no "mutual demands" between the parties to apply against each other. (*Fassberg Construction Co. v. Housing Authority of City of Los Angeles, supra*, 152 Cal.App.4th at p. 762.) The court denied the motion for a different reason—because the monetary judgment for SCFC consisting of unpaid assignment fees would come from the individual unit owners, not the HOA. Even assuming the HOA had recovered attorney fees and costs against SCFC, it could not claim an offset for a debt that would be paid by the individuals. The HOA has made no attempt to show this ruling was wrong, arguing solely that the issue was unripe. We will affirm in the absence of any demonstrated error.

This is not an issue like the prevailing party that requires reconsideration in view of the outcome in the merits appeal. The court's order denying the offset motion did not depend on the prevailing party determination. As such, vacating the order and directing the trial court to reconsider the offset motion would serve no useful purpose. On remand, the court could again decide the HOA was not a prevailing party and decline to award fees and costs, in which case there are no mutual demands and thus no offset is possible.

16

In the event the court decides the HOA is entitled to fees and costs, the court has already ruled the HOA cannot offset the liabilities of the individual owners. Either way, the HOA would not end up with an offset. We reject the HOA's attempt to take a second bite of the offset apple.

## DISPOSITION

The March 11, 2014 order on the attorney fees motions is reversed in part and affirmed in part. The order is reversed to the extent the court denied attorney fees and costs to the HOA and SCFC. On remand, the court should reconsider the HOA's and SCFC's entitlement to attorney fees in light of our disposition in the merits appeal. The order as it relates to Lansdale is affirmed. The May 21, 2014 order on the costs and offset motions is also reversed in part and affirmed in part. The order is reversed to the extent the court denied costs to the HOA and SCFC, and on remand, the court should also reconsider the HOA's and SCFC's right to costs, given our disposition in the merits appeal. The order is otherwise affirmed, including those portions denying the HOA's offset motion and awarding Lansdale his costs. Lansdale shall recover his costs on appeal. The HOA and SCFC shall bear their own costs on appeal.


FLIER, J.

WE CONCUR:


BIGELOW, P. J.


GRIMES, J.

17